**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RUEBEN J. EICHER and KARRI L. EICHER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 1:22-29 |
| v. | ) ) | Judge Cathy Bissoon |
| LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Pending before the Court is a motion (**Doc. 6**) by Defendant Liberty Mutual Personal

Insurance Company ("Defendant") seeking dismissal of the Complaint. For the reasons that

follow, Defendant's motion will be GRANTED IN PART and DENIED IN PART.

**A. Factual and Procedural Background**

On or about November 22, 2021, Plaintiff Rueben J. Eicher ("Mr. Eicher") was operating

his 2019 Ram 3500 truck when it was struck from behind by a 2015 Honda CRV on State Route

322 in West Mead Township, Crawford County, Pennsylvania. Compl. ¶ 7 (Doc. 1). As a result

of this accident, the Eicher's 2019 Ram 3500 truck sustained significant damage. Id. ¶ 8.

At the time of the accident, Plaintiffs were insured under a motor vehicle insurance

policy ("Policy") issued by Defendant to Mr. Eicher and his wife, Plaintiff Karri L. Eicher

("Mrs. Eicher"). Id. ¶¶ 1, 10; *see also* id. Ex. A (copy of Policy and Policy declarations). The

Policy included collision coverage for damage to the truck. Id. ¶ 11.

1

On November 22, 2021, Mr. Eicher advised Defendant of that day's vehicle collision and opened a claim for collision coverage with Defendant.  Id. ¶ 12.  On that same date, Defendant advised Mr. Eicher to take the truck to Gainer Auto Body & Frame, Inc., located in Kingsville, Ohio so Defendant could assess the damage to the truck.  Id. ¶ 13.  Mr. Eicher delivered the truck to Gainer that day.  Id. ¶ 14.

Despite numerous inquiries from the Eichers about the status of the claim, Defendant did not respond until December 17, 2021, when it provided them with a "CCC ONE Market Valuation Report."  Id. ¶¶ 15-16 and Ex. B.  The Report contained a "CCC Valuation" of $37,623.00.  Id. Ex. B at 1.  On December 18, 2021, Defendant offered to resolve Plaintiffs' claim for collision coverage listing $37,623.00 as the "actual cash value" of the truck.  Id. ¶ 25 and Ex. C.  Plaintiffs dispute that this figure accurately represents the vehicle's "actual cash value" and contend that Defendant has breached its contract with Plaintiffs by refusing and failing to pay them the actual cash value of the truck as required under the Policy.  Id. ¶¶ 26-36.

On January 27, 2022, Plaintiffs filed this lawsuit, asserting a claim for Breach of Contract in Count I of their Complaint, UTPCPL violations in Count II and a claim for alleged bad faith in Count III.  (Doc. 1).  On March 29, 2022, Defendant filed the pending motion for dismissal of the Complaint.  (Doc. 6).

## B. Legal Analysis

### 1.    Breach of Contract Claim

To prevail on a breach of contract claim in Pennsylvania, a plaintiff must demonstrate: (1) the existence of a contract (which Defendant here does not dispute); (2) a breach of a duty imposed by the contract; and (3) damages.  *See* Sullivan v. Chartwell Inv. Partners, L.P., 873 A.2d 710, 716 (Pa. Super. Ct. 2005).  Under Pennsylvania law, the interpretation of an insurance

contract is a matter of law for the court.  Lexington v. West Penn Hosp., 423 F.3d 318, 323 (3d

Cir. 2005).  The insurance contract here imposes a duty on Defendant to provide Plaintiffs

collision coverage according to its terms.  As set forth in the declarations pages, Plaintiffs'

collision coverage is for "actual cash value" less a deductible.  Complaint Ex. A (Doc. 1-1) at 3.[1]

The contract also provides that an "adjustment for depreciation and physical condition will be

made in determining actual cash value at the time of loss."  Id. at 16.  Here, Defendant does not

dispute that Plaintiffs were entitled to the "actual cash value" of the truck at issue.  *See* Motion to

Dismiss (Doc. 6) ¶ 40 (stating that "Liberty had more than a reasonable basis for its offer and

determination of *actual cash value* under the Eichers' policy" (emphasis added)).  The issue is

whether Defendant properly calculated the "actual cash value" pursuant to the contractual terms.

Taking the Complaint's allegations as true, the Court finds that Plaintiffs have stated a

plausible breach of contract claim sufficient to withstand a motion to dismiss and proceed to

discovery.  For example, taking the Complaint as true, after Plaintiffs disputed Defendant's

valuation and submitted an alternative valuation, Defendant requested that Plaintiffs provide it

with five comparable vehicles that met a series of guidelines concerning, *inter alia*, mileage,

make, model and location.  Complaint (Doc. 1) ¶¶ 33-35.  The policy, however, appears to

provide a very different process for handling a disagreement over the amount of loss.  *See*

Complaint Ex. A (Doc. 1-1) at 17 (setting forth a process by which a party in disagreement may

demand an appraisal of the loss requiring only one competent appraiser each and the selection of

an umpire to help determine the actual cash value and amount of loss).  Defendant also admits

that the CCC One market valuation report on which it relied included only one comparable

---

[1] In deciding a 12(b)(6) motion to dismiss, courts can also look to exhibits attached to the complaint and matters of public record.  Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012).

vehicle of the same year, make and model of Plaintiffs' vehicle and a second purportedly

"comparable" vehicle that was a class size smaller than Plaintiffs' truck (2500 Series v. 3500

Series).  Complaint (Doc. 1) ¶¶ 20-21 & Ex. B.  It also is unclear whether the use of a

"Pennsylvania Statewide Value" in the market valuation report resulted in an understatement of

the actual cash value under the terms of the policy and 31 Pa. Code § 62.3(e).  Id. ¶¶ 22-24.

Taking Plaintiffs' allegations as true and giving them the benefit of any doubt, the Court

finds that Plaintiffs have stated a plausible breach of contract claim sufficient to survive a

12(b)(6) motion to dismiss.  Accordingly, the motion to dismiss is denied as to Count I.

2.      UTPCPL Claim

Defendants argue that Count II of the complaint should be dismissed because the

complaint does not set forth factual content that is sufficient to support a plausible UTPCPL

claim.  The Court agrees.

The purpose of the Pennsylvania UTPCPL "is to protect consumers from 'fraud and

unfair or deceptive business practices.'"  Doherty v. Allstate Indem. Co., Civil Action No. 15-

5165, 2016 WL 5390638, at *4 (E.D. Pa. Sept. 27, 2016) (citing Commonwealth ex rel. Corbett

v. Peoples Benefit Servs., 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007)).  To that end, the

UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in

the conduct of any trade or commerce," as defined by other provisions of the statute.  73 Pa. Stat.

Ann. §§ 201-3 and 201-2(4).  Further, the UTPCPL provides a private cause of action to "[a]ny

person who purchases or leases goods or services primarily for personal, family or household

purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a

result of the use or employment by any person of a method, act or practice declared unlawful."

Id. § 201-9.2(a).  Where liability is established, the court may, in its discretion, award up to three times the actual damages sustained, as well as costs and reasonable attorney fees.  Id.

Here, Plaintiffs acknowledge that the UTPCPL does *not* apply to the handling of insurance claims.  Pl. Opp. Br. (Doc. 10) at 8.  They note, however, that the statute does apply to the sale of an insurance policy.  See id. at 8 (citing Doherty, 2016 WL 5390638, at *5-7).  Plaintiffs stated theory of liability, therefore, is that they "paid additional premiums on their Liberty Mutual insurance policy for collision coverage because they justifiably relied on Liberty Mutual's assurances that, if their 2019 Ram 3500 truck was totaled in a collision, Liberty Mutual would fairly and promptly evaluate Plaintiffs' claim and compensate them for the 'actual cash value' of the 2019 Ram 3500 truck."  Id. at 9 (quoting Complaint ¶ 39).  Instead of offering "actual cash value," however, Defendant only offered to pay an "adjusted vehicle value" in which the "actual cash value" was reduced by a "Pennsylvania Statewide Value" based upon all similarly equipped vehicles regardless of condition or mileage.  Id.

Plaintiffs' argument is without merit.  Defendant here has never disputed that the policy requires payment of the "actual cash value" of the truck.  Rather, in its December 18, 2021 letter to Mr. Eicher, Defendant expressly offered to pay Plaintiffs an "actual cash value" of $37,623.  Compl. ¶ 25 & Ex. C.  Indeed, Plaintiffs themselves assert in the Complaint that "Liberty Mutual did not dispute that Plaintiffs were covered by Collision Coverage and entitled to receive the 'actual cash value' of their 2019 Ram 3500 truck."  Id. ¶ 46. Thus, the true disagreement here is not over what Defendant represented it was willing to pay when it issued the policy, but, rather, whether Defendant accurately and/or properly calculated that amount for the collision at issue within the meaning of the contract.

Because Plaintiffs' allegations relate not to the sale of the auto insurance policy but to Defendant's conduct during the claims handling process, the allegations are not actionable under the UTPCPL. *See* <u>Mondron v. State Farm Mut. Auto. Ins. Co.</u>, No. CV 16-412, 2016 WL 7384183, at *6 (W.D. Pa. Dec. 21, 2016) (citing <u>Doherty</u>, 2016 WL 5390638, at *8 and noting that, "[i]nstead, such claims are properly asserted under Pennsylvania's bad faith statute"). Because the defects in this claim cannot feasibly be cured through amendment, and because the handling of Plaintiffs' collision claim is more properly addressed in the context of Plaintiffs' breach of contract claim and Pennsylvania's bad faith statute, the UTPCPL claim will be dismissed with prejudice.

     3.     <u>Bad Faith Claim</u>

Pennsylvania's bad faith statute allows courts to award interest, punitive damages and/or costs and attorney fees to an insured "if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. Cons. Stat. Ann. § 8371.  The Pennsylvania Supreme Court has held that to prove a statutory bad faith claim, "a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." <u>Rancosky v. Washington Nat'l Ins. Co.</u>, 170 A.3d 364, 377 (Pa. 2017) (citing <u>Terletsky v. Prudential Prop. & Cas. Ins. Co.</u>, 649 A.2d 680 (Pa. Super. Ct. 1994)).  The Court further clarified that, although "proof of the insurer's subjective motive of self-interest or ill-will" may be probative of the second prong of this test, it is not a necessary prerequisite to succeeding on a bad faith claim. <u>Id.</u>  "Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong." <u>Id.</u>  Mere negligence, however, is not enough. <u>See id.</u> at 374.

Although the essence of bad faith is the insurer's frivolous or unfounded refusal to pay benefits, the Court of Appeals for the Third Circuit has recognized that bad faith conduct may encompass an insurer's unreasonable lack of investigation into the facts or failure to communicate with the insured.  See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999).  "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured."  Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) (citing Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 887 (Pa. Super. Ct. 2000)).  Without more, however, "Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses."  Seto v. State Farm Ins. Co., 855 F. Supp.2d 424, 430 (W.D. Pa. 2012).

Defendants argue that Count III of the complaint should be dismissed because the complaint does not set forth factual content that is sufficient to support a plausible bad faith claim.  The Court agrees.

The crux of Defendant's alleged bad faith conduct as set forth in the Complaint includes: "excessive and unreasonable delay" in handling Plaintiffs' claim; an unjustified and unexplained low offer; significantly understating the truck's "actual cash value" and disregarding evidence that the true "actual cash value" exceeded the "adjusted cash value" identified in the market valuation report.  Compl. ¶¶ 56-62.  Although numerous, these types of conclusory allegations are insufficient to state a plausible basis for relief.  See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (on a Rule 12(b)(6) motion, the court must disregard "mere conclusory statements"); Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (court should identify allegations that "are no more than conclusions [and] are not entitled to the assumption of truth"); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (a "pleading that offers 'labels and

7

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'" (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))).

To the extent the Complaint attempts to assert supporting facts to suggest that

Defendant's offer was "unreasonably low" or that Defendant "delayed the claims process by

demanding irrelevant and unnecessary information" from Plaintiffs, the allegations do not state a

plausible claim for bad faith relief.  Taken as true, the Complaint's own factual averments as

well as the exhibits attached thereto bolster this conclusion.  *See* Complaint (Doc. 1) & Exs. A-C.

Defendant did not deny Plaintiffs' claim.  Among other things, Defendant directed Mr. Eicher to

take the truck to a specific auto body shop on November 22, 2021, the same date Mr. Eicher

opened his claim, and Mr. Eicher promptly delivered the truck to the shop on that same date.

Compl. (Doc. 1) ¶¶ 13-14.  On December 17, 2021, less than a month thereafter, Defendant

provided a detailed, 18-page market evaluation report listing an "adjusted vehicle value" of

$37,623.  Id. ¶ 16 & Ex. B.  A day later, Defendant sent a letter to Mr. Eicher explaining the

claims handling process, referencing the market evaluation report and, consistent with that

report, offering an "actual cash value" of  $37,623.  Id. ¶ 25 & Ex. C.  This figure differed from

Plaintiffs' later-proposed valuation of $46,050 by less than $9,000.  Id. ¶ 26.[2]  Defendant also

issued payment in the amount of $35,912.56 to the lienholder of the truck, Community Bank,

N.A.  Id. ¶ 32.  In numerous cases, federal courts addressing similar types of allegations have

concluded that the plaintiff's averments were insufficient to state a viable claim for bad faith.

---

[2] In addition, although Plaintiffs disagree with the market evaluation report, Pennsylvania law designates approved guide sources to calculate the replacement value of vehicles deemed to be a total loss.  *See* 31 Pa. Code § 62.3(e).  CCC Information Services, Inc., the author of the market valuation report, is one of those approved guide sources.  *See* https://www.pacodeandbulletin.gov/ Display/pabull?file=/secure/pabulletin/data/vol47/47-8/352.html (last visited Dec. 28, 2022).  Thus, it was not unreasonable for Defendant to rely on the report in its valuation for purposes of the bad faith analysis.

See, e.g., Mondron, 2016 WL 7384183, at *4 (collecting cases); Gowton v. State Farm Fire &

Cas. Co., No. CV 15-1164, 2017 WL 818847, at *2-*4 (W.D. Pa. Mar. 2, 2017) (same).

Because Plaintiffs have failed to state a plausible basis for recovery under Pennsylvania's

bad faith statute, Count III of the Complaint will be dismissed without prejudice.[3]

## II. ORDER

For the reasons stated above, Defendant's Motion to Dismiss the Complaint (**Doc. 6**) is

**GRANTED IN PART IN DENIED IN PART.**  Plaintiff's bad faith claim at Count III of the

Complaint is dismissed without prejudice and with leave to amend.  Plaintiff shall file any

amended Complaint on or before **January 11, 2023**.  Plaintiff's claim under the Unfair Trade

Practices and Consumer Protection Law at Count II of the Complaint is dismissed with

prejudice.  The Motion to Dismiss the breach of contract claim at Count I of the Complaint is

denied.


IT IS SO ORDERED.


December 30, 2022                                    s/Cathy Bissoon
                                                    Cathy Bissoon
                                                    United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[3] The fact that Plaintiffs may proceed to discovery on their breach of contract claim does not alter this analysis.  Under Pennsylvania law, the presence or absence of bad faith does not turn on whether the insurer was legally correct in denying an insured's claim.  Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 359–60 n.7 (E.D. Pa. 1997).  "If it did, the need for an independent analysis of an insured's bad faith claim would disappear, as the applicable section 8371 claim would turn specifically on the underlying coverage determination."  Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007).  *See also* Est. of Sippey v. Metro. Grp. Prop. & Cas. Ins. Co., No. CV 17-227, 2017 WL 5971126, at *3-4 (W.D. Pa. Dec. 1, 2017).